UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:18-cv-10968-DJC

KORY MCSWEENEY,
Plaintiff,

v.

CITY OF BROCKTON,
ERIK HILLIARD, in his individual and official capacity; CALLIE ROYSTER, in his individual and official capacity; GEORGE ALMEIDA, in his individual and official capacity; & FRANCISCO LOPEZ, in his individual and official Capacity,
Defendants.

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH AND TO PRECLUDE EVIDENCE & TESTIMONY**

The Defendants submit this brief in opposition to the Plaintiff's Motion to Quash and to Preclude Evidence & Testimony ("Motion"), filed by him on March 2, 2020 at ECF No. 84. For ease of the Court, the Defendants will address each section of the Plaintiff's Motion in the same order as reflected in ECF No. 84.

1. Audio Tape Transcripts

The Plaintiff complains that he had certain audiotapes transcribed and that the Defendants "have not reviewed either transcripts [sic], and this is precluding the Plaintiff [from] submitting them to Court prior to trial." (Motion at p. 2). This statement is not accurate. On Friday, February 28, 2020 – prior to the Plaintiff filing his Motion – the Defendants informed the Plaintiff via email that he should list the transcripts as "contested"

for now, so not to delay submission of the exhibits and corresponding lists to the Court.[1] From the outset of the parties' discussions regarding exhibits, the Defendants raised the issue with the Plaintiff that the transcripts did not appear to be accurate based on their initial review of them when compared to the corresponding audiotapes. The Defendants offered to point out for the Plaintiff certain sections of the transcripts that did not appear to have been transcribed accurately. On March 3, 2020, the Defendants provided this information to the Plaintiff after counsel listened to every statement on every tape and compared it to the transcripts. This was a tedious task to say the least. The Defendants are now awaiting a response from the plaintiff as to the proposed changes.

The Plaintiff's statement that the Defendants had not reviewed the transcripts prior to him filing his Motion was disingenuous; in fact, it was their review of the transcripts that caused the Defendants to inform the Plaintiff that they did not assent to the transcripts being listed as "uncontested" exhibits. Further, nothing the Defendants did prevented the Plaintiff from submitting the exhibits and exhibits lists with the transcripts listed as "contested" until the Defendants had a fair opportunity to provide the Plaintiff with citations to certain omissions and errors. In fact, the Defendants suggested this, and the Plaintiff ignored the Defendants' position that the exhibits be submitted without further delay. This entire section of the Plaintiff's Motion is misleading and it does not appear to seek any relief. Rather, the Plaintiff uses his specious presentation of facts in order to argue at the end of his Motion that the Defendants are somehow acting in bad faith. The Defendants respond by (1) cautioning the Plaintiff from levying such allegations against good standing members of the bar without a good-faith basis for doing so (which he

[1] It should be noted that counsel for the Defendants' office, in writing, offered to take the reins with regard to the exhibits and exhibit lists but the Plaintiff insisted that he retain control over them.

unequivocally does not have) and (2) maintaining that the facts and law support that the Defendants have not acted in bad faith. If the parties cannot come to an agreement on the transcripts due to the inaccuracies described, then it is for the Court to decide whether and in what form to admit them.

2. Plaintiff's Request for Disciplinary Records

The Plaintiff is correct that he moved for leave to serve the Defendants with additional discovery beyond the discovery limits of the Local Rules and Rules of Civil Procedure. The Plaintiff expressly sought from the Court certain discovery items, including the Defendants' full disciplinary records, to which the Defendants objected. The issue was briefed and referred to the Honorable Donald L. Cabell, who only allowed the Plaintiff to serve limited discovery, which was answered. The Plaintiff does not appear to contend otherwise. The Court's Order read as follows:

> Without purporting to waive on their behalf any potential objections the defendants may otherwise have or raise, the court will allow the plaintiff to serve a third set of requests for production of documents on each of the defendants as provided herein. With respect to the individual officers, the plaintiff may serve on them the enumerated requests as set forth in his motion. With respect to the City of Brockton, the plaintiff may not serve Requests Nos. 1 and 5; the plaintiff clearly had a basis to make these requests in his first two sets of requests and does not provide a reason for not having done so. **The plaintiff may serve Request No. 2 but the scope of the request will be limited to any disciplinary action related to the incident on May 18, 2015.** Finally, the plaintiff may serve Request Nos. 3 and 4 as set forth in his motion.

[ECF No. 42, Court's Order on Plaintiff's Motion to Compel] (emphasis added).

The Plaintiff appears to be arguing in his Motion that, because he was not permitted access to the Defendants' disciplinary records by the Court, that the defense is (or should be) somehow precluded from using the Plaintiff's employment history at trial. This argument is utterly nonsensical.

The Plaintiff brought this lawsuit against the City and individual defendants in which he squarely put his employment history at issue by (1) alleging that it was the May 18, 2015 criminal charge that caused him to lose employment prospects and (2) purporting to have been defamed by the Defendants, thus causing him supposed damage to his reputation. Specifically, the Plaintiff alleged in his Complaint "his employment prospects are greatly diminished due to both his criminal record and the memorialization of the false statements made by the Defendants in news articles and internet blogs…" [ECF No. 1, Complaint, at ¶ 51]. He also alleged that, as a result of the Defendants' actions, he "will have difficulty obtaining employment and his reputation has been irreparably damaged." Id. at ¶ 57. In his Answers to Interrogatories, when asked to provide an itemized statement of his damages, the Plaintiff responded that he is seeking 1.7 million dollars to account for the "[l]oss of potential jobs" and $180,000 in "[l]ost wages." (**Exhibit 1**, Plaintiff's Answers to Interrogatories, at p. 11, Answer No. 22). He also swore that it was the actions of the Defendants that have "made it near impossible to find employment in the criminal justice field." Id. at p. 4, Ans. No. 3. He continued as to his reputation, "people who once had a positive view of me no longer do." Id.

The Plaintiff cannot with a straight face argue that his employment history and performance are not germane and intrinsically intertwined with both his claims and the relief he seeks, and has sought, in this lawsuit. As a result, the law supports and favors that the Defendants are permitted to introduce the Plaintiff's employment and criminal history at trial. In Van Liew v. Eliopoulos, 92 Mass. App. Ct. 114, 118–20 (2017), a defamation action, the Plaintiff argued that evidence of an unrelated arrest and prosecution for attempting to poison a neighbor's dog should have been excluded at trial. Id. at p. 118. The Plaintiff also argued that evidence related to commission enforcement proceedings against one of his

attorneys, and references to his anti-Vatican and population control opinions, should also have been excluded as irrelevant or prejudicial. Id. The Massachusetts Appeals Court, interpreting applicable defamation law, held that the evidence – including that of the arrest and charge for the dog incident – were not substantially more prejudicial than probative in a defamation action where the Plaintiff's reputation was placed at issue by him. Id. at 119, citing Mass. G. Evid. § 403 (2017), which essentially mirrors Fed.R.Evid. 403. This is particularly true here, where the Plaintiff claims that it was one particular criminal charge and prosecution that damaged his reputation and caused him to suffer lost wages and job prospects.

The Plaintiff has indisputably placed his employment and criminal history at issue by alleging and testifying that it was this particular criminal charge – which was dismissed for "failure to prosecute" – that caused him harm, both as it pertains to his reputation and with regard to his ability to retain and maintain employment. It is particularly significant that, even when a privilege might apply (which is not the case here), when a plaintiff places a particular subject matter at issue, the law permits (and it is expected) that disclosure and admissibility is the norm. See, e.g., Kingsley v. Delaware, Lackawanna & Western Railroad, 20 F.R.D. 156, 158 (S.D.N.Y.1957); See also Weisenberger v. W.E. Button & Co., 35 F.R.D. 556, 557 (S.D.N.Y. 1964) (no privilege regarding tax returns exists where the litigant has placed his income at issue). This is true of even communications relating to psychotherapist-patient and attorney-client privilege. See, e.g., Cabot vs. Lewis, 2015 WL 13648107, at *1 (D.Mass. 2015). It simply cannot be said that the Plaintiff here has not placed his employment history and prospects, or his criminal offender history, directly at issue by claiming that this criminal charge caused him to lose employment prospects, suffer lost wages, and suffer harm to his reputation. Notably, based on the Complaint and

Plaintiff's discovery responses and testimony, the former two subsets of damages are being sought as to all live counts, not only for supposed defamation.

The Plaintiff's employment history is critical to the defense of this action. It is without question relevant under Rule 401, the probative value is not substantially outweighed by the danger of unfair prejudice under Rule 403, and the Plaintiff has put it directly at issue, rendering any exclusion highly detrimental to the defense of this action. Finally, the Plaintiff's ability to retain and maintain employment goes to the heart of the defense of mitigation, which was pled in this case.

3. Motions In Limine & Deadlines

The Plaintiff regurgitates his procedural arguments from prior briefing that the Defendants' Motion for Judgment on the Pleadings and Daubert Motion were untimely filed. Neither is the case. The remainder of the facts presented in this section of the Plaintiff's Motion prove only that the Defendants sought extensions that were either assented to, granted, or both.

With regard to the Defendants' Motion for Judgment on the Pleadings, first, the Defendants agreed to withdraw the Motion and re-file it as a Motion for Directed Verdict at the close of the Plaintiff's case. Thus, the issue is moot, but the Plaintiff, for some unknown reason, finds little solace in that fact. Regardless, Federal Rule of Civil Procedure 12(c) permits the Defendants to move for judgment on the pleadings at any time so long as trial is not delayed. Id. The Defendants filed their very straightforward Motion nearly one month before trial. The Defendants chose to file this Motion pre-trial so to avoid the filing of partial and/or multiple dispositive motions, which this Court disfavors. Second, a Motion for Judgment on the Pleadings is not a Motion in Limine; however, the Motion was still filed in accordance with the extension date granted by the Court for the Defendants' filings. Quite

simply, the facts surrounding the filing of this Motion have no bearing on any legitimate issues before the Court.

Regarding the Defendants' Daubert Motion, the Court granted the Plaintiff the time he requested to oppose it. Notably, a Daubert challenge can be made at any time, including even at trial. Nonetheless, any alleged prejudice to the Plaintiff as it pertains to this Motion was cured by this Court granting him an additional week to file an opposition, which he did and the Court ruled in his favor [ECF No. 88].

Regarding the Defendants' Motion to Exclude Evidence and Preclude Testimony Relating to Plaintiff's Claim for Purported Withholding of Exculpatory Evidence [ECF No. 81], this Motion was filed in direct response to the Plaintiff filing an unsolicited "timeline" with the Court [ECF No. 79] – ironically, after the deadline for Motions in Limine had passed – which made it apparent to the Defendants that the Plaintiff has absolutely no good faith basis to assert that claim at trial based on the evidence presented by the Plaintiff in his very own submission. The Plaintiff cannot file late submissions under the guise of "timelines" or other headings and then expect the defense not to respond, particularly where the Plaintiff presents an issue to the Court that makes it abundantly clear that he intends to proceed with a claim absent any evidentiary basis whatsoever.

Finally, regarding the Defendants' filing of a supplemental witness list, there is no rule that precludes the Defendants from doing so. The Defendants supplemented their witness list with a witness known to the Plaintiff as the ADA who prosecuted him for the subject charge. The District Attorney's file was produced in this matter and this witness should come as no surprise to the Plaintiff based on the fact that he is claiming that the Defendants were responsible for the failure to prosecute him. Supplementing a witness list with a relevant witness known to all parties cannot be said to have prejudiced the Plaintiff in

any way. This supplementation was filed three weeks prior to the start of trial and before the pre-trial conference.

The Defendants' Second Supplemental Witness List was filed on February 26, 2020, just shy of two weeks before trial, and included the names of three Keepers of the Records for Plaintiff's Prior Employers and three impeachment witnesses. The Defendants will address the "Keeper" additions in a subsequent section addressing the Plaintiff's actual Motion to Quash. Regarding the three witnesses, it should first be noted that – as impeachment witnesses – the Defendants were not required to disclose them to the Plaintiff during discovery. Fed.R.Civ.P. 26(a) (The text of Rule 26(a) makes clear that parties need not disclose impeachment witnesses). However, once the Defendants learned of the existence of these witnesses on February 24, 2020, and made the decision to call these witnesses during trial preparation, they seasonably supplemented their witness list accordingly. The Defendants expressly reserved their right to do so in prior filings. While these facts alone are sufficient to permit these witnesses to testify, there is an even more compelling reason for their testimony and the timing of the Defendants' supplementation.

In his deposition, at **Exhibit 2**, Deposition of Plaintiff, at 16:19-17:11, when asked about why he left his employ at TGI Friday's, the Plaintiff testified under oath that he left for a better job opportunity. Specifically, he testified "I left for a better opportunity with Uno's 8 Chicago grill." Id. at 17:6-8. Defense counsel asked him again, "[s]o it was your decision to leave to take the job at Uno's?" to which the Plaintiff responded, "[y]es." Id. at 17:9-11. The witnesses and the relevant documents demonstrate that the Plaintiff's statements were false; however, the Defendants did not know that the Plaintiff had perjured himself until Defendants' counsel visited the Quincy District Court on February 24, 2020 and reviewed the police report relating to the Plaintiff's charges of larceny. The Defendants

learned at that time that the Plaintiff was charged and prosecuted for larceny from his former employer, TGI Friday's. The court file demonstrated that he was terminated as a result. The file also contained the names of the three witnesses. Thus, the Defendants learned that the Plaintiff had testified falsely at deposition and withheld information from the Defendants as to the reason for him having left TGI Friday's.

If the Plaintiff had testified truthfully, the Defendants would have sought information concerning this termination during the discovery period, but it was through their own lawful pre-trial work that the Defendants uncovered that the Plaintiff's larceny charge was directly related to his loss of employment. The Defendants are wholly entitled to call witnesses on this issue at trial and, just like in Van Liew v. Eliopoulos, this information is not only relevant, but it is not substantially outweighed by the risk of unfair prejudice under Rule 403. The Plaintiff should not and cannot be rewarded for having lied at his deposition. This evidence is highly probative on the Plaintiff's defamation claim and with regard to his alleged employment related damages. Had the Plaintiff not testified falsely at deposition, these witnesses could have been listed sooner. By way of compromise, the Defendants believe that they will be able to elicit the testimony they need through only one of the three witnesses, but all three were named out of an abundance of caution. Notably, during the investigation of this incident by TGI Fridays, it was discovered that the Plaintiff conspired with witness Raymond Sanchez to steal from their employer and to cover up the theft.

As a result of the Plaintiff's false statements at deposition, the Defendants were deprived of information to which they were entitled during discovery. Moreover, it should be noted that the Plaintiff is in no way prejudiced by this supplementation, because Mr. McSweeney certainly knew about his issues at TGI Friday's during the entire pendency of this case and concealed it when asked directly. The Defendants make no assumptions about

when Plaintiff's counsel learned that his client had lied at deposition, but it certainly seems that he knows now. The Defendants suggest that Plaintiff's counsel should have complied with Massachusetts Rule of Professional Conduct 3.3(a)(3) requiring that "reasonable remedial measures" be taken upon learning that his client testified untruthfully. However, rather than comply with his ethical obligations, counsel has filed a Motion asking to have this evidence excluded knowing that his client testified falsely about it. Additionally, during discovery, the Defendants asked the Plaintiff to produce "any and all documents that might disprove or undermine [his] claims." (**Exhibit 3**, Plaintiff's Responses to Defendant's Requests for Production, at Request No. 11). The Plaintiff – through his attorney – responded that "[n]one exist." Id. It is the Plaintiff's deceptive testimony that resulted in the Defendants delay in listing the additional witnesses added on February 26, 2020, and the Plaintiff should not be rewarded for his unlawful behavior.

After learning this information, the Defendants issued the trial subpoenas for Plaintiff's employment records as discussed in the next section. The Defendants should not have had to disclose their trial strategy or impeachment evidence to the Plaintiff but, due to him continuing to mischaracterize the facts and misunderstand the reasons for the Defendants' conduct when presenting information to this Court, undersigned counsel offers these competent, supported facts to strongly urge the Court to deny the Plaintiff's Motion outright and permit them the trial subpoenas issued. As to the witnesses, there is absolutely no sound basis to preclude them from testifying at trial if the Defendant chooses to call them.

Finally, the Plaintiff continued producing documents (five separate post-discovery productions were made) to the Defendants through February 2020, seven months after the close of discovery and one month prior to the start of trial. The Plaintiff also filed

documents attached to his "timeline" that were not produced to the Defendants, and which contained the name of a potential witness, which resulted in one of the subpoenas sent. For him to complain about tardiness in this instance is entirely disingenuous.

4. The Document Subpoenas

The Plaintiff complains that the Defendants are conducting discovery after the discovery deadline. With regard to their investigation work in calling the phone number of a person who placed a call to the plaintiff during the police pursuit, the Defendants are entitled to speak with any witnesses whom they wish to prior to trial and there is no rule or law that prohibits that practice (it is quite common), nor are they prohibited from reviewing relevant court documents. The only remotely potential issue raised in this section of the Plaintiff's Motion is that the Rule 45 subpoenas were issued "to continue with discovery," without leave of court. (Motion at p. 6). The Plaintiff contends that, because the Defendants knew of the identity of the Plaintiff's employers before discovery closed, they should have subpoenaed the records earlier. (Motion at p. 7). However, as described above, the Defendants did not have a reason to believe that the Plaintiff had falsely testified about his employment history until their recent visit to the Quincy District Court. Only after learning that they had been lied to did the Defendants issue trial subpoenas for the Plaintiff's employment records.[2] The records from TGI Fridays and the Plaintiff's subsequent records from Uno's are highly probative in light of the Plaintiff's deception at deposition, and these records go to the very heart of his claims for defamation, employment related damages, and the Defendants' claim of failure to mitigate. In an effort to compromise, the Defendants will

[2] To date, the Defendants have received a notice that one subpoena was served on the wrong location, an objection from one employer absent a court order, and the production of documents from Burger King that the Defendants do not seek to admit or use in any way at trial. The recipients have been notified to hold any further production in abeyance until further notice from the Court.

agree to withdraw the other subpoenas to Plaintiff's employers; however, they seek an Order from this Court permitting the trial subpoenas to TGI Friday's and Uno's and ordering those files produced.

The need for the TGI Friday's records is obvious; however, the Uno's records also contain information relating to the truthfulness of the Plaintiff's testimony, including his employment application, as well as documents relating to an incident that occurred while the Plaintiff was employed at Uno's, resulting in his termination from that employer. The Plaintiff testified at deposition that he was terminated from Uno's after an investigation was conducted into his use of the slur "Nigger" towards/about a guest. (Exhibit 3 at 14:10-18). Now that the Defendants are aware that the Plaintiff was dishonest about his departure from TGI Friday's and arrival at Uno's, they should be entitled to records from both employers. The substance of the records should, again, come at no surprise to the Plaintiff.

Procedurally, the Plaintiff argues that the subpoenas are deficient. He cites to a District of Maine case to support that the subpoenas served required leave of court. (Motion at p. 7). The Defendants disagree. The subpoenas at issue in the case cited by the Plaintiff involve subpoenas served as pre-trial subpoenas and not "trial subpoenas." The difference might be a subtle one, but they are distinct based on the language of the rule. See Rockwood Select Asset Fund XI vs. Devine, Millimet & Branch, PA, No. 14-CV-303-JL, 2016 WL 2637818, at *10 (D.N.H. May 6, 2016) ("To the extent that the subpoenas in question were trial subpoenas, see Fed. R. Civ. P. 45(a)(1)), they were not governed by the discovery deadline."). The comments to Rule 45 also appear to suggest that leave of court is not required. The Advisory Committee Notes state that "[t]he requirement in the last sentence of original Rule 45(d)(1) – to the effect that leave of court should be obtained for the issuance of such a subpoena – has been omitted.").

The Plaintiff also complains that he was not provided with notice of the subpoenas as required by Fed.R.Civ.P. 45(a)(4). The Advisory Committee notes state as follows: "the words 'before trial' were restored to the notice provision that was moved to new Rule 45(a)(4)." Thus, "trial subpoenas" do not appear to be subject to the notice requirement that pre-trial subpoenas are. The Defendants' counsel have always interpreted and understood the Rule to require notice to the opposing party for subpoenas issued pursuant to Rule 45 during discovery, but not as it related to "trial subpoenas." Regardless, the Defendants did notify the Plaintiff of the recipients of their subpoenas when this information was requested by him on February 27, 2020, the day after the majority of the subpoenas were prepared. The Plaintiff said nothing in response, and did not confer with Defendants about any concerns he supposedly had about the service of said subpoenas. Instead, the Plaintiff waited five days and then filed a Motion to Quash.

Upon reflection and further analysis of Rule 45, the Defendants realize that the service of trial subpoenas requesting appearance at trial with certain documents, but including an option to produce the documents in lieu of appearing, while arguably standard practice, might blur the line between a "pre-trial" and "trial" subpoena for purposes of Rule 45. It was not the Defendants' intention to do so. Thus, to the extent this Court finds that further notice is required than what was already provided to the Plaintiff, the Defendants are more than willing to cure this deficiency by providing copies of the subpoenas to the Plaintiff. The Defendants, as stated previously, will also agree to withdraw all of the trial subpoenas, but for the two served on TGI Friday's and Uno's and, to the extent the Court finds that leave of Court is somehow required, the Defendants seek leave to keep those two subpoenas intact and request an Order to the recipients that the documents be produced forthwith.

5. Evidence Regarding Raymond Sanchez's Employment History

First, the Defendants have not issued any subpoenas seeking Mr. Sanchez's employment records. The Plaintiff argues that Mr. Sanchez's employment history is inadmissible under Rule 403. The Defendants disagree. There is no reason to exclude Mr. Sanchez's employment history to the extent it can shed light on his motivation to testify in favor of the Plaintiff in this case. Separately, Rule 608(b) permits, on cross-examination, instances of misconduct to be inquired into if they are probative of the character for truthfulness or untruthfulness of the witness. Id.

6. Bad faith allegations

These allegations are without merit and the Plaintiff had no good faith basis for filing a Motion containing them. The fact that the Defendants take issue with transcriptions that the Plaintiff paid for – that do not appear to be accurate – is not bad faith. Neither is the Defendant contacting witnesses before trial (notably, the Defendants called a single number from the Plaintiff's phone record – a number that called the Plaintiff during the chase). Finally, the Defendants filing a Motion for Judgment on the Pleadings as permitted by Rule, responding to "timelines" and "pre-trial memoranda" submitted by the Plaintiff after the deadline for Motions in Limine had passed, and acting in accordance with a reasonable interpretation of the Rules of Civil Procedure and Evidence, does not constitute bad faith. What is bad faith, however, is (1) the likely perjurious testimony of the Plaintiff and, (2) if counsel for the Plaintiff learned – prior to filing his Motion – that his client had testified falsely on a material matter at his deposition, he should have taken actions to remedy that lie.

CONCLUSION & RELIEF

For these reasons, the Plaintiff's Motion to Quash should be denied. The Defendants agree to withdraw all trial subpoenas seeking documents, but for the two to TGI

Friday's and Uno's, and agrees to provide copies of those subpoenas, and any responses thereto, to the Plaintiff. The Defendants ask that this Court issue an Order that TGI Friday's and Uno's produce the requested records to the Defendants or to this Court in accordance with the subpoenas.

*Respectfully submitted,*
The Defendants,
By their attorneys,

*/s/Leonard H. Kesten*
Leonard H. Kesten, BBO# 542042
Michael Stefanilo, Jr., BBO# 684500
BHPK LAW
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
lkesten@bhpklaw.com
mstefanilo@bhpklaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

*/s/Leonard H. Kesten*
Leonard H. Kesten, BBO# 542042

Dated: March 5, 2020